UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

NATIONWIDE MUTUAL INSURANCE COMPANY and AMCO INSURANCE COMPANY,

Plaintiffs,

v.

ZURICH AMERICAN INSURANCE COMPANY and AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY,

Defendants.

No. 1:21-cv-00944-TLN-CSK

**ORDER**

This matter is before the Court on Plaintiffs Nationwide Mutual Insurance Company and AMCO Insurance Company's (collectively, "Plaintiffs") Motion for Summary Judgement (ECF No. 81) and Defendants Zurich American Insurance Company and American Guarantee and Liability Insurance Company's (collectively, "Defendants") Cross Motion for Summary Judgment (ECF No. 82). All motions have been fully briefed. For the reasons set forth below, the Court DENIES Plaintiffs' motion and GRANTS Defendants' motion.

///

///

///

///

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of an insurance coverage dispute between Plaintiffs and Defendants. Plaintiffs are liability insurers for Motor Parts Distributors, Inc. ("Motor Parts"), a distribution company that specializes in car parts and tools. (ECF No. 55 at 2.) Defendants are liability insurers for Express Services, Inc. ("Express"), a staffing agency who provided employee staffing services to Motor Parts. (*Id*.) Plaintiffs allege Defendants had a duty to defend and indemnify Motor Parts in an underlying personal injury action ("Underlying Action") because Motor Parts is an additional insured under Express's insurance policies ("Subject Policies") with Defendants. (*Id*. at 2–3.)

### A. The Underlying Action

On May 10, 2019, Edward Laverone filed a personal injury action against Plaintiffs' insured, Motor Parts, and Defendants' insured, Express, in Stanislaus County Superior Court for injuries sustained in an accident caused by Edward Gonzales Jr. (ECF No. 55 at 20.) At the time of the accident, Gonzalez was a delivery driver who was staffed by Express to work for Motor Parts. (*Id*. at 5.)

The accident took place in the early afternoon of January 3, 2018. (*Id*. at 22.) On that day, Gonzalez used his car to pick up auto parts for delivery at Motor Parts' Modesto, California warehouse and then completed his deliveries for Motor Parts in Sonora, California. (ECF No. 89-1 at 3.) After completing these deliveries, Gonzalez informed his supervisor at Motor Parts that he was clocking out for the day due to mechanical problems with his car. (*Id*.) On his way home, Gonzalez crashed into Laverone's car, killing Gonzales and injuring Laverone. (*Id*. at 5.)

In October 2022, the parties to the Underlying Action entered into a settlement agreement and release under which Laverone received $8.85 million. (ECF No. 55 at 5.) Of this amount, Plaintiffs paid $6 million on behalf of Motor Parts and Defendants paid the remaining $2.85 million on behalf of Express. (*Id*.)

///

///

///

B. The Subject Policies

Defendant Zurich American Insurance Company ("Zurich") issued Commercial Insurance Policy No. PRA 5854213-05 ("Zurich Policy") to Express for the policy period of October 1, 2017, to October 1, 2018. (ECF No. 55 at 4.) Express is a named insured on the Zurich Policy, but Motor Parts is not. (*Id.*)

The Zurich Policy includes Hired And/Or Non-Owned Auto Coverage, with limits of liability in the amount of $1 million per accident and provides coverage for "damages awarded against an insured because of bodily injury caused by an accident and resulting from the ownership, maintenance, or use of a covered auto, subject to various policy terms, conditions, and exclusions." (*Id.* (internal quotation marks omitted).) The Zurich Policy also requires Zurich to defend insureds against suits seeking covered damages. (*Id.*)

Defendant American Guarantee & Liability Insurance Company ("American") issued Commercial Liability Umbrella Liability Insurance Policy No. UMB 5498877-05 ("American Policy") to Express for the policy period of October 1, 2017, to October 1, 2018. (*Id.*) Express is a named insured on the American Policy, but Motor Parts is not. (*Id.*) The American Policy provides "excess follow-form type liability to an insured for liabilities covered by the underlying Zurich Policy in excess of the limits of the Zurich Policy, and subject to various policy terms, conditions, and exclusions." (*Id.*)

C. Procedural History

Plaintiffs initiated this action on June 16, 2021. (ECF No. 1.) On November 11, 2022, Plaintiffs filed a First Amended Complaint seeking declaratory relief, regarding Defendants' duty to defend and indemnify Motor Parts in the Underlying Action, equitable contribution regarding defense costs associated with the Underlying Action, and equitable subrogation against Defendants. (ECF No. 55.) On November 6, 2023, Plaintiffs filed the instant motion for summary judgment. (ECF No. 81.) Defendants filed a cross motion for summary judgement on November 7, 2023. (ECF No. 82.)

///

///

## II. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id*. at 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Defendant Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

## III. ANALYSIS

In moving for summary judgment, Plaintiffs seek a declaration from the Court that "Zurich had a duty to defend Motor Parts for the [Underlying Action] and failed to do so." (ECF No. 81-1 at 6.) In its cross motion for summary judgment, Defendants argue they did not have a duty to defend Motor Parts in the Underlying Action because Motor Parts is not their insured, and Plaintiffs are thus not entitled to equitable contribution or subrogation. (ECF No. 82 at 16.)

Under California law, "[a]n insurer that has paid defense and settlement expenses may pursue reimbursement from other insurers on various equitable grounds, including subrogation and contribution." *Hartford Cas. Ins. Co.*, 123 Cal. App. 4th 278, 286–87 (2004). Thus, in an action by an insurer to obtain contribution from a co-insurer, the burden is on the insurer who paid the loss to show that a potential coverage obligation arose or existed under the co-insurer's policy. *See Safeco Ins. Co. of Am. v. Super. Ct.*, 140 Cal. App. 4th 874, 879 (2006). A plaintiff

meets its burden of proof when it makes a prima facie showing of a potential for coverage under the co-insurer's liability insurance policy. *Id.* at 881. The burden then shifts to the defendant to prove the absence of coverage. *Id.* Similarly, "[e]quitable subrogation puts the insurer into the position of the insured 'to pursue recovery from third parties legally responsible to the insured for a loss which the insurer has both insured and paid." *Westport Ins. Corp. v. California Cas. Mgt. Co.*, 916 F.3d 769, 781 (9th Cir. 2019) (quoting *Fireman's Fund Insurance Co. v. Maryland Casualty Co.*, 65 Cal. App. 4th 1279, 1282 (1998)).

A. The Insurance Coverage Dispute

In the instant case, both Plaintiffs and Defendants agree that for Plaintiffs to make a prima facie showing of a potential for coverage for Motor Parts under the Zurich Policy, Plaintiffs must first show that Gonzalez qualifies as an additional insured under the Zurich Policy. (ECF No. 87 at 7, No. 82 at 18.) Plaintiffs argue they have made a prima facie showing that Gonzales qualifies as an additional insured under the Zurich Policy's Coverage Extension Endorsement ("CEE"). (ECF No. 81-1 at 12.) The pertinent language of the CEE is described below:

> 1. **The following is added to the Who Is An Insured Provision in Section II — Covered Autos Liability Coverage**:
>
> The following are also "insureds":
>
> a. Any "employee of [Express] is an "insured" while using a covered "auto" you don't own, hire, or borrow for acts performed within the scope of employment by "Express" …
>
> b. …
>
> c. …
>
> d. … .

(ECF No. 82-2 at 223.) It is undisputed that the first category of insureds added through the CEE are Express employees who use a covered "auto" to perform acts within the scope of their employment for Express (the "Employee Category"). (ECF Nos. 82 at 18, 87 at 7.) Plaintiffs

argue Gonzalez qualifies as an insured under the CEE's Employe Category because, at the time of the accident, he was an Express employee using a covered "auto" to perform acts within the scope of his employment with Express. (ECF No. 81-1 at 13.)

Plaintiffs then argue Motor Parts qualifies as an additional inured under the Zurich Policy because the CEE adds four additional categories of insureds to the Zurich Policy's Who Is An Insured provision. (*Id.*) The pertinent language from the Who Is An Insured provision is described below:

> **1. Who Is an Insured**
>
> The following are insureds:
>
> a. You [Express] for any covered "auto."
>
> b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except …
>
> c. ***Anyone liable for the conduct of an "insured" described above*** but only to the extent of that liability.

(ECF No. 82-2 at 182–83 (emphasis added).) Plaintiffs argue that "[b]y amending the Who Is An Insured Provision to add more insureds, the insureds 'described above' [in subparagraph (c.)] were enlarged to include the insureds added by the Coverage Extension Endorsement." (*Id.*) Put differently, Plaintiffs argue that because Motor Parts was liable for the conduct of Gonzales, subparagraph c. of the Who Is An Insured provision confers insured status on Motor Parts. (*Id.*)

Defendants disagree with Plaintiffs' interpretations of the Zurich Policy and argue, "[e]ven assuming arguendo that Gonzalez qualifies as an insured under the CEE, Motor Parts still does not qualify as an insured." (ECF No. 82 at 20.) Specifically, Defendants argue "subparagraph c. of the Who Is An Insured provision in the main form applies solely to the specific 'insureds described above.'" (ECF No. 82 at 21.) "Gonzales, even if considered an insured under the CEE is not an 'insured described above' subparagraph c. of the Who Is An Insured provision in the main form." (*Id.*) The only insureds 'described above' subparagraph c. are those described in subparagraphs a. and b." (*Id.*)

Thus, Plaintiffs' and Defendants' cross motions for summary judgement turn on the Court's interpretation of the CEE and subparagraph c. of the "Who Is An Insured" provision and whether Motor Parts qualifies as an insured under that interpretation.

B. <u>Insurance Contract Interpretation</u>

California law controls this insurance dispute, and California appellate court decisions bind federal courts in California where they apply. *See Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 994 (9th Cir. 2007).

Under California law, where the underlying facts are undisputed, interpretation of an insurance policy is a question of law. *Merced Mut. Ins. Co. v. Mendez*, 213 Cal. App. 3d 41, 45 (1989); *see also Legacy Vulcan Corp. v. Super. Ct.*, 185 C.al. App. 4th 667, 688 (2010) ("Contract interpretation, including the resolution of any ambiguity, is solely a judicial function, unless interpretation turns on credibility of extrinsic evidence."). California Courts interpret insurance policies using the same rules of interpretation applicable to other contracts. *Legacy Vulcan Corp.*, 185 C.al. App. 4th at 688.

"The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties" which should be inferred solely from the written provisions of the contract if possible. *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003). "If contractual language is clear and explicit, it governs." *ACL Techs., Inc. v. Northbrook Prop. & Cas. Ins. Co.*, 17 Cal. App. 4th 1773, 1784 (1993) (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264, (1992)); *see also* Cal. Civ. Code § 1638. "The 'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage,' controls judicial interpretation." *TRB Invs., Inc. v. Fireman's Fund Ins. Co.*, 40 Cal. 4th 19, 27 (2006).

"On the other hand, when policy language is ambiguous, rules applicable to resolving ambiguity control." *St. Paul Mercury Ins. Co. v. Frontier Pacific Ins. Co.*, 111 Cal.App.4th 1234, 1243 (2003) (citing *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264–65 (1992)). "A contract term will be considered ambiguous when it is capable of two or more constructions,

both of which are reasonable. But 'courts will not strain to create an ambiguity where none exists.'" *Westport Ins. Corp.*, 76 F. Supp. 3d at 879 (quoting *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18–19 (1995)).

### C. Whether Motor Parts Qualifies as an Insured Under the Zurich Policy

To summarize again, Plaintiffs argue Motor Parts qualifies as an insured under the Zurich Policy because the insureds added through the CEE should be added to the Who Is An Insured Provision above subparagraph c., so that subparagraph c. applies to all insureds added to the Zurich Policy through the CEE. (ECF No. 81-1 at 14.) By contrast, Defendants argue Motor Parts does not qualify as an insured under the Zurich Policy because the added insureds from the CEE should be added to the Who Is An Insured provision after subparagraph c., so that subparagraph c. only applies to those insureds described in subparagraphs a. and b. (ECF No. 84 at 14–15.) Below are helpful illustrations provided by Defendants which visually depict the parties' interpretations of how the CEE and the Who Is an Insured provision work together:

Plaintiffs' Interpretation:

| ACTUAL POLICY LANGUAGE | REWRITE OF THE POLICY PLAINTIFFS SEEK TO HAVE THE COURT ADOPT |
|---|---|
| **Business Auto Coverage Form**<br><br>**SECTION II – LIABILITY COVERAGE**<br>**A. Coverage**<br>***<br>**1. Who Is An Insured**<br>The following are "insureds":<br><br>**a.** You [i.e. Express] for any covered "auto".<br><br>**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except….<br><br>**c.** anyone liable for the conduct of an "insured" *described above* but only to the extent of that liability. (italics added).<br><br>**Coverage Extension Endorsement**<br><br>**A. Amended Who Is An Insured**<br>The following is added to the **Who Is An Insured** Provision in **Section II**….:<br><br>The *following* are also insureds:<br><br>**a.** Any "employee" of yours [i.e. Express] is an "insured" while using a covered "auto" you don't own, hire or borrow *for acts performed within the scope of employment by you* [i.e. Express]….(italics added)<br>**b.** ….<br>**c.** ….<br>**d.** …. | **Business Auto Coverage Form**<br><br>**SECTION II – LIABILITY COVERAGE**<br>**A. Coverage**<br>***<br>**1. Who Is An Insured**<br>The following are "insureds":<br>***<br>**a.** You [i.e. Express] for any covered "auto".<br><br>**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except….<br><br>**c.** anyone liable for the conduct of an "insured" *described above* but only to the extent of that liability. (italics added). |

Defendants' Interpretation:

| POLICY TERMS | ADDING THE COVERAGE EXTENSION TO THE WHO IS AN INSURED PROVISION |
| --- | --- |
| **Business Auto Coverage Form**<br><br>**SECTION II – LIABILITY COVERAGE**<br>**A. Coverage**<br>***<br>**1. Who Is An Insured**<br>The following are "insureds":<br><br>**a.** You [i.e. Express] for any covered "auto".<br><br>**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except….<br><br>**c.** anyone liable for the conduct of an "insured" *described above* but only to the extent of that liability. (italics added).<br><br>**Coverage Extension Endorsement**<br><br>**A. Amended Who Is An Insured**<br>The following is added to the **Who Is An Insured** Provision in **Section II…:**<br><br>The *following* are also insureds:<br><br>**a.** Any "employee" of yours [i.e. Express] is an "insured" while using a covered "auto" you don't own, hire or borrow *for acts performed within the scope of employment by you* [i.e. Express]….(italics added)<br>**b.** ….<br>**c.** ….<br>**d.** …. | **Business Auto Coverage Form**<br><br>**SECTION II – LIABILITY COVERAGE**<br>**A. Coverage**<br>***<br>**1. Who Is An Insured**<br>The following are "insureds":<br>***<br>**a.** You [i.e. Express] for any covered "auto".<br><br>**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except….<br><br>**c.** anyone liable for the conduct of an "insured" *described above* but only to the extent of that liability. (italics added).<br><br>The *following* are also insureds:<br><br>**a.** Any "employee" of yours [i.e. Express] is an "insured" while using a covered "auto" you don't own, hire or borrow *for acts performed within the scope of employment by you* [i.e. Express]….(italics added)<br>**b.** ….<br>**c.** ….<br>**d.** …. |

(ECF No. 84 at 14–15.)

Plaintiffs argue the Court should adopt their interpretation of the CEE and Who Is An Insured provision because it is the "straightforward and logical reading of these provisions together." (ECF No. 87 at 15.) Defendants argue the Court cannot adopt Plaintiffs' interpretations of these two provisions because "Plaintiffs are not only attempting to rewrite the Zurich Policy, but rewrite it in a way that does not make sense." (ECF No. 84 at 15.) The Court agrees with Defendants.

"Ordinarily, an insurer is free to limit the risks it will assume and will be liable only for a loss within the terms of the policy, and a court will not rewrite the terms of a policy …." *Underwriters of Interest Subscribing to Policy No. A15274001 v. ProBuilders Specialty Ins. Co.*, 193 Cal. Rptr. 3d 898, 905 (2015) (internal citations omitted), *as modified on denial of reh'g* (Nov. 13, 2015). Moreover, an insurance policy should be interpretated according to its plain, ordinary, and accepted sense. *Id*. Thus, the Court must respect the plain language of any

limitation of coverage within a policy. *Id*. ("It is the ordinary rule that an insurance company has the right to limit the coverage of a policy issued by it and when it does so, the plain language of the limitation must be respected.")

In the instant case, the text of subparagraph c. limits coverage to "anyone liable for the conduct of an 'insured' *described above*." (ECF No. 82-2 at 182–83 (emphasis added).) Having reviewed this text in the context of the entire Zurich Policy, the Court finds a plain reading of subparagraph c. of the Who Is An Insured provision is only susceptible to one reasonable interpretation which is that subparagraph c. of the Who Is An Insured provision applies only to those insureds described above in subparagraphs a. and b. (*See id*.)

Additionally, it is unclear to the Court how the CEE could be interpreted to expand the list of insureds "described above" subparagraph c. Specifically, the CEE states that it is adding four additional categories of insureds to the Who Is An Insured provision but states nothing about where the additional categories of insureds should go within the list of insureds of the Who Is An Insured provision. (ECF No. 82-2 at 223.) While the drafters of the CEE could have been more precise in describing where the additional insureds were to be included in the Who Is An Insured provision, contrary to Plaintiffs' arguments (ECF No. 87 at 16–17), the fact that policy language could be more explicit does not render it ambiguous under California law. *City of Carlsbad v. Ins. Co. of State of Pennsylvania*, 180 Cal. App. 4th 176, 186 (2009) ("[J]ust because language could be more precise or explicit does not mean it is ambiguous."); Thus, in view of the plain language of the CEE, the Court finds the CEE is not ambiguous and a layperson would logically interpret CEE to add the new insured to the end of the list of insureds in the Who Is An Insured provision, not to shoehorn them between subparagraphs b. and c. *See AIU Ins. Co. v. Super. Ct.*, 51 Cal. 3d 807, 822 (1990) ("If the meaning a layperson would ascribe to contract language is not ambiguous," then the court applies that meaning.).

Plaintiffs also argue the CEE's failure to exempt or except the added insureds from subparagraph c. of the Who Is An Insured Provision means subparagraph c. "was expanded to apply to added insureds, making the parties potentially liable for the conduct of the added insureds." (ECF No. 87 at 15 ("That is the straightforward and logical reading of these provisions

together.”).) However, the Court finds Plaintiffs’ argument is unsupported and contrary to the plain text of the Zurich Policy.

Within the insurance industry, subparagraph c. of the Who Is An Insured provision is known as an omnibus clause. “Liability insurance policies for commercial motor vehicles typically include an omnibus clause.” *Am. States Ins. Co. v. Progressive Cas. Ins. Co.*, 180 Cal. App. 4th 18, 22 (2009) (internal quotation marks omitted). In the instant case, like most other omnibus clauses, subparagraph c. defines an “insured” as one who is vicariously liable for conduct of another named insured. *Id.*; (ECF No. 82-2 at 182–83.) However, there is nothing in the language of the Zurich Policy which suggests Zurich intended for the omnibus clause in subparagraph c. to be a general, collective, or catchall provision of the policy that applies to all insureds. (*See* ECF No. 82-2 at 182–83.) Indeed, the language used by Zurich in subparagraph c. suggests the insureds described in subparagraph c. are a distinct and independent group of insureds defined by the Who Is An Insured provision. (*See id.*) Specifically, this is a district group of insureds who is liable for the conduct of insureds as defined in the above subparagraphs a. and b. (*See id.*) Even if Gonzales qualifies as an insured by virtue of the Employee Clause within the CEE,[1] it is undisputed Gonzales does not qualify as an insured under either subparagraphs a. or b.[2] (ECF Nos. 82 at 21, No. 87 at 7–14.)

Finally, Plaintiffs argue a separate endorsement, titled the Newly Acquired or Formed Organization Amendment (“Newly Acquired Endorsement”), contradicts Defendants’ interpretation and “clearly demonstrates that there was never any intent to list the added insureds in the Coverage Extension Endorsement … below the omnibus clause as Zurich insists.” (ECF

---

[1] Given the Court finds Motor Parts does not qualify as insured under the Zurich Policy regardless of whether Gonzales qualifies as an insured under the CEE, the Court need not and does not address whether Gonzales qualifies as an insured under the CEE.

[2] Specifically, Plaintiffs and Defendants agree that subparagraph a. confers insured status on Express “for any covered ‘auto’” and subparagraph b. confers insured status on “anyone else while using with [Express’s] permission a covered ‘auto’ [Express] own[s], hire[s], or borrow[s]” subject to certain conditions. (ECF Nos. 82 at 21, No. 87 at 7–14.) It is undisputed Gonzalez is not Express, the company, and it is undisputed Gonzales was using his own car, not a car owned by Express, at the time of the accident. (*Id.*)

No. 87 at 17.) The Newly Acquired Endorsement expressly adds an additional insured to the Who Is An Insured Provision as subparagraph d., below subparagraph c. (ECF No. 82-2 at 230.) The pertinent portions of the Newly Enquired Endorsement are described below:

> **Changes to Section II – Liability Coverage**
>
> The following is added to Paragraph **A.1. Who Is An Insured:**
>
> **d.** Any organization you newly acquire or form, . . .
>
> . . .
>
> No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or Limited liability company that is not shown as a Named Insured in the Declarations.

(*Id.*)

Plaintiffs argue "[i]f Zurich intended that insured categories A.1.a., b., c., and d., added by the Coverage Extension Endorsement be listed below or under the omnibus clause then it could have easily done so by using language similar to that used in the New Organization Endorsement … [,] supporting the inescapable conclusion that the insureds added to the Who Is an Insured provision by the Coverage Extension Endorsement were never intended to be listed below the omnibus clause …." (ECF No. 87 at 18–19.) Defendants disagree with Plaintiffs and argue Plaintiffs' reliance on the Newly Acquired Endorsement is "misguided," and if anything, the "Newly Acquired Endorsement supports the notion that insureds added by the CEE should not be crammed between subparagraphs …." (ECF No. 89 at 10.) Once again, the Court agrees with Defendants.

Having reviewed the Newly Acquired Endorsement and the CEE, the Court finds there is a clear distinction between the two endorsements. Specifically, the Newly Acquired Insured Endorsement changes the text of paragraph A.1. of the Who Is An Insured provision by adding a new subparagraph and a new category of insured to the Zurich Policy. (*See* ECF No. 82-2 at 230.) On the other hand, the CEE states that it is adding four additional categories of insureds to the Who Is An Insured provision, with no language indicating where in the provision these

additional insureds should be included. (*Id*. at 223.) As raised by Plaintiffs, if the intent of the policy drafters was for the new CEE insureds to be inserted above subparagraph c., then the policy drafters could have added the appropriate subparagraph designations for the CEE insureds just as they did in the Newly Acquired Endorsement. Indeed, the Court finds the policy drafters' failure to include subparagraph designations for the CEE insureds further suggests to the Court that the policy drafters intended for the CEE insureds to be added to the Who Is An Insured provision as a distinct group of insureds separate from those listed in paragraph A, not shoehorned between subparagraphs b. and c.

Thus, the Court finds that the plain text of the Zurich Policy reveals that, even if Gonzales qualifies as an additional insured under the CEE, Motor Parts still does not qualify as an additional insured under the Zurich Policy's omnibus clause in subparagraph c. of the Who Is An Insured provision. This is because a plain reading of the CEE makes clear that the CEE only confers insured status on those who meet the terms and conditions of the CEE and adds those insureds to the Who Is An Insured provision. (*See* ECF No. 82-2 at 223.) However, there is nothing in the text of the Zurich Policy which indicates that the CEE expands the list of insureds "described above" subparagraph c. in the Who Is An Insured provision. (*See id*.) Furthermore, under the plain meaning rule, the only reasonable interpretation of subparagraph c. of the Who Is An Insured provision is that it confers insured status on those who are "liable for the conduct of an 'insured' described above" in subparagraphs a. and b. (*See id*. at 182–83.) While Motor Parts may be liable for Gonzales' conduct, Gonzales does not qualify as an insured under subparagraphs a. or b. of the Who Is An Insured provision.

Accordingly, the Court finds Plaintiffs have not made a prima facie showing that Motor Parts qualifies as an additional insured under the Zurich Policy or that a potential coverage obligation arose or existed under the Zurich Policy for Defendants. Additionally, because Motor Parts does not qualify as an additional insured under the Zurich Policy, the Court finds Defendants did not have a duty to defend Motor Parts in the Underlying Action and Plaintiffs have no right to reimbursement.

///

## IV. CONCLUSION

For the foregoing reasons, the Court hereby DENIES Plaintiffs' Motion for Summary Judgement (ECF No. 81) and GRANTS Defendants' Motion for Summary Judgement (ECF No. 82.) The Clerk of Court is directed to enter judgement in Defendants' favor and close this case.

IT IS SO ORDERED.

Date: September 05, 2024

Troy L. Nunley
United States District Judge